Thomas J. Lloyd III, ISB No. 7772
Brian Esler, ISB No. 7362
MILLER NASH, LLP
950 W. Bannock St., Ste. 1100
Boise, Idaho 83716
Tel: 208-609-3798
Email: brian.esler@millernash.com
         thomas.lloyd@millernash.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HUSKY MOUNTAIN ACQUISITION, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> SKYLAB ARCHITECTURE, LLC, an Oregon limited liability company, and ANDERSEN CORPORATION, a Minnesota corporation, <br><br> Defendant. | Case No. <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff Husky Mountain Acquisition, Inc. ("Husky"), by and through its counsel of record, Miller Nash, LLP, and for its claims and causes of action against the above-named Defendants, hereby complains and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Husky is a Delaware corporation with its principal place of business located at 3501 Wazee Street, Suite 400, Denver, Colorado 80216.

2.      Defendant Skylab Architecture, LLC ("Skylab") is an Oregon limited liability company with its principal place of business located at 1825 NW Vaughn St., Portland, Oregon 97209.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

3.      Defendant Andersen Corporation ("Andersen," and together with Skylab, the "Defendants") is a Minnesota corporation with its principal place of business located at 551 Maine Street North, Bayport, MN 55003-1049.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. For diversity purposes, Plaintiff is a citizen of the state of Delaware, Skylab is a citizen of the state of Oregon and Andersen is a citizen of the state of Minnesota.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as the subject matter of this action involves the improvement of real property situated in Bonner County, Idaho

## GENERAL ALLEGATIONS

6.      The Schweitzer Mountain Resort and ski area is located at 10000 Schweitzer Mountain Road, Sandpoint, ID 83864 ("Schweitzer" or the "Resort"), and has been in operation since 1963. Schweitzer's mountain operations include one base area, two summits, two skiable basins, and approximately 2,900 skiable acres. The base area (known as the "Village") consists of several buildings, including hotels, a ski and snowboard shop, several restaurants, an activity center, and a spa.

7.      Plaintiff Husky is the present record owner of the Resort, having acquired it from the previous owner, Schweitzer Mountain, LLC (together with is wholly-owned subsidiary Schweitzer Mountain Properties, LLC, the "Seller"), in about August, 2023.

8.      Up until the construction of the hotel and amenities that form the subject matter of this lawsuit, the hotel options in the Village included the Selkirk Lodge and the White Pine Lodge.

9.      In the late 2010s, Seller determined to construct additional lodging, dining and spa offerings in the Village, including what is now known as the Humbird Hotel (the "Humbird" or "Humbird Hotel") (a free-standing hotel), the Cambium Spa (an addition to the existing Selkirk Lodge), and the 5 Needles hotel/condos (an addition to the existing White Pine Lodge). Relevant to this litigation is the construction of the Humbird and the Cambium Spa, including the associated check-in area, parking garage, drainage and landscape design (collectively, the "Project").

10.      As ultimately constructed, the layout of the Village in the immediate vicinity of the Project is depicted as follows:



11.     Seller (through its wholly-owned subsidiary Schweitzer Mountain Properties, LLC or "SMP") engaged Defendant Skylab to provide architectural design, construction documents, value engineering, choice of materials, and construction administration for the Project.

12.     The scope of Defendant Skylab's engagement included all buildings, parking areas, landscaping, walkways, and driveways for the Project, including the Humbird Hotel.

13.     The initial engagement between Seller and Defendant Skylab was executed via a "Project Proposal" dated January 2, 2019.  Seller and Defendant Skylab thereafter entered into various amendments, change orders, or supplemental contracts, including for the design, review, and supervision of the construction of the Humbird Hotel and the various surrounding elements that give rise to this litigation. Together, those documents are referred to herein as the "Skylab Contract" or the "Contract".

14.     In about June, 2019, Seller engaged Walker Construction, Inc. ("Walker") to act as the general contractor on the Project for construction of a podium.[1] The scope of work for the podium included mass excavation, earth retention and shoring as required, footings, underground plumbing and electrical, and all concrete work to the top of the podium. One aspect of the scope of Walker's contract was to construct, based upon Defendant Skylab's designs, an underground wall directly abutting the podium/foundation for the existing Selkirk Lodge (known as the "Party Wall" between the two structures). Construction on the Project began shortly thereafter.

---

[1] A construction podium is also known as a pedestal or platform and is usually made of steel or concrete. It consists of horizontal divisions between an upper tower and lower "podium" that can then be topped by multiple wood frame stories.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

15. Further based upon Defendant Skylab's designs, the work performed by Walker required significant reformation of the existing topography to the south of the existing Selkirk Lodge and to the area where the Humbird was to be constructed.

16. Upon information and belief, due to disagreements between Seller and Walker, Walker was not contracted to perform additional construction for the Project (the vertical construction) beyond what it was required to complete for the podium.

17. By July of 2020, Defendant Skylab had produced bid set drawings for the remainder of the Project pursuant to its contract with Seller.

18. In about October 2020, Seller entered into a standard form agreement with Jackson Contractor Group, Inc. ("Jackson") to act as the general contractor for the remainder of the Project. Upon information and belief, Walker was still finishing work on the podium then.

19. Thereafter, Jackson managed construction for the remainder of the Project (other than the podium), based upon the drawings, designs, and approvals provided by Defendant Skylab for the Project.

20. Among other activities performed pursuant to its Contract, Defendant Skylab also reviewed and approved both Walker's and Jackson's work, including their waterproofing and other construction work.

21. Among other activities performed pursuant to its Contract, Defendant Skylab recommended and chose various materials and components for construction of the Humbird Hotel, including choosing to use and approve the installation of E-Series aluminum clad windows from Defendant Andersen.

22. On about November 12, 2020, Chris Nordstrom from Defendant Andersen submitted a "Substitution Request" to Defendant Skylab to allow inclusion of Defendant

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

Andersen as an approved manufacturer for the Project. In that Request, Defendant Andersen specifically certified that the function, appearance, and quality of their windows were equivalent to or superior to the windows Defendant Skylab had originally specified for the Humbird. Defendant Andersen included with that Request various performance standards that it represented its E-Series windows would meet. It also included its Limited Warranty. That certification has now been proven incorrect based on the numerous leaks and other window failures currently being experienced at the Humbird Hotel.

23.    Defendant Skylab approved Defendant Andersen's application and substitution on about November 17, 2020. Defendant Andersen's windows were subsequently installed at the Humbird Hotel (including its Crow's Bench restaurant) and constitute all or substantially all of the windows (approximately 130 windows) installed at the Project.

24.    Defendant Andersen provided a "Limited Warranty" covering the E-Series windows installed in the Project, which generally warranted the windows to be free from defects for twenty (20) years or ten (10) years from the date of purchase depending on what component was involved.

25.    On information and belief, The Humbird Hotel, Cambium Spa, and parking garage opened for at least partial operations sometime in the summer of 2023. Upon further information and belief however, Jackson or its subcontractors continued to do work on the Project after that time and defendant Skylab continued to provide services on the Project pursuant to its Contract.

26.    As constructed, the Humbird Hotel is approximately 66,580 square feet, consisting of 31 rooms. It features an onsite restaurant, "The Crow's Bench," with indoor and outdoor seating, as well as an under-hotel parking garage, a hot tub area located on the roof of

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

the Humbird, a fitness area, work/meeting space, and a gathering area. The Cambium Spa, located adjacent to the Humbird's check-in driveway, offers a variety of massage and spa treatment options, as well as yoga and exercise classes.

27.    On or around June 1, 2023, Alterra Mountain Company U.S. Inc. ("AMCUI") (predecessor in interest by assignment of Plaintiff Husky), entered into an Asset Purchase Agreement ("APA") with Schweitzer Mountain, LLC and the MKM Trust for the purchase of the Resort by AMCUI (the "Transaction"). The parties did not close on that Transaction until late August 2023.

28.    As required by the APA, Seller thereafter assigned its rights under the Skylab Contract to Plaintiff Husky (the "Assignment"). By way of the APA and Assignment, Seller (including SMP) assigned in writing the Skylab Contract to Plaintiff Husky.

29.    Despite the Project being newly constructed, a plethora of issues have now been discovered, including but not limited to:

a.    Inadequate and/or improper design of the boiler, boiler room, and attendant features, including an excessively lengthy exhaust system that led to frequent shut-downs and cycling of the system;

b.    Inadequate design and components for the Project's snowmelt system;

c.    Inadequately designed or inadequately manufactured exterior components such as Defendant Andersen's windows installed at the Humbird, contributing to water intrusion and leaking in and around the windows (the windows leak when sprayed with an ordinary water hose at 5.5 psf which is only two-thirds of the specified water resistance pressure);

COMPLAINT AND DEMAND FOR JURY TRIAL - 7

d.    Persistent and recurring roof leaks at the Humbird resulting from inadequate design and materials selection;

e.    Inadequate design and/or choice of materials, leading to water intrusion and leaking into the parking garage;

f.    Inadequate design and/or choice of materials for Humbird's bird's mouths,[2] leading to water intrusion and leaking;

g.    Inadequate design or choice of materials for the building automation system, with various aspects of the building's control systems unable to communicate with each other;

h.    Inadequate design and/or inadequate choice of materials for the Project's elevation drainage, leading to significant leaking and water intrusion into the underground interior spaces and parking garages, and substantial pooling of water in and around walkways, driveways, and landscaping areas throughout the Project:

i.    Inadequate design and/or choice of materials for the Party Wall and associated drainage, resulting in water streaming into the basement management office of the Selkirk during even minor rain events;

---

[2] The "bird's mouths" constructed at the Humbird involved a design/construction technique whereby certain windows would protrude outwardly from the side of the building in a diagonal direction from the building, offset for each floor of the hotel. The protrusion from a given floor would then require a small, v-shaped roofing platform and additional v-shaped siding installation, or "bird' mouth" above and along each window. Upon information and belief, the purpose of this design feature was to capture snowfall atop each of the bird's mouths, to add extra aesthetic to the look of the building during winter.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 8**

j.  Inadequate design and/or choice of materials for various other drainage systems, leading to water seeping into the laundry facilities, generator room, and other areas;

k.  Inadequate design and/or choice of materials for the hot water system, leaving guests waiting excessively long times for hot water;

l.  Inadequate design and/or inadequate choice of materials for the Cambium Spa fireplace, leading to cracking and excessive heat;

m.  Inadequate design and/or choice of materials for various exhaust and ventilation systems; and

n.  Cracking of interior wood columns, signifying deficient materials selected and used in the construction of the Humbird.

30.  These and other problems have caused substantial property damage to the Humbird and the Cambium Spa, due to ongoing leaks and water damage, among other things.

31.  These and other problems have also caused Plaintiff Husky to be unable to rent certain rooms or to have to close certain areas, resulting in a loss of revenue.

32.  These and other problems have also caused Plaintiff Husky to incur repair and remediation costs, which costs are expected to grow over time.

33.  On about August 22, 2023, a window testing company performed water penetration tests on approximately eight of Defendant Andersen's windows at the Humbird Hotel.  Six of those windows failed that testing and were shown to have multiple leaks or water ingresses.

34.  On about May 15 and 16, 2024, a window testing company performed further water penetration tests in accordance with ASTM E1105 as well as diagnostic evaluations in

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

accordance with AAMA 511.  A representative of Defendant Andersen (David Watson) attended the testing done on May 16, 2024.  Approximately nine (different) windows were tested at that time.  All nine of the tested windows were found to have leaks or water ingresses.

35.    Numerous other of Defendant Andersen's windows at the Humbird that were not tested have nonetheless been observed to leak or allow water ingress.

36.    To address the persistent deficiencies and failures, Plaintiff Husky has already been forced to engage its own consultants and repair contractors at its own expense to determine the scope of necessary repairs and remediation and to repair immediately certain elements, including and especially those that present life-safety hazards. Plaintiff Husky has incurred, and continues to incur, substantial expenses in progressing with remediation efforts.

37.    As a direct, foreseeable and proximate result of Defendants' acts and omissions, Plaintiff Husky has suffered damages in amounts to be proven at trial.

38.    Plaintiff Husky submitted a warranty claim to Defendant Andersen in approximately January of 2025.  Despite various correspondence since then, the parties have not reached any resolution and Defendant Anderson has not honored its warranty.

39.    Plaintiff Husky has also engaged with counsel for Defendant Skylab to seek resolution and has offered to mediate these claims. To date, Defendant Skylab has not agreed to mediate and has not resolved these claims.

40.    Plaintiff Husky offered interested parties a chance to tour the Project and view the problems in approximately October of 2025.  Defendant Skylab did not avail itself of that opportunity.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – Defendant Skylab)

41.     Plaintiff Husky hereby incorporates each of the foregoing paragraphs of this Complaint as if fully restated *in haec verba*.

42.     Defendant Skylab and Seller entered into a valid and binding contract for the purpose of the design, choice of materials, and general oversight of the Project, as a result of which Defendant Skylab had a contractual duty (express and/or implied) to perform its work with reasonable skill and care in exchange for compensation from Seller.

43.     Husky is the valid assignee and successor-in-interest of Seller's rights and benefits under the contract between Seller and Defendant Skylab.

44.     Defendant Skylab materially breached its express and implied contractual duties and warranties with respect to the Project.

45.     As a direct and proximate result of Defendant Skylab's breaches, Plaintiff Husky has suffered losses and damages, in amounts to be proven at the trial of this matter, but which include costs of investigation and repair, diminution in value of the Project, loss of use, and other damages and losses which already greatly exceed $75,000 and are expected to be many multiples of that amount.

46.     As a further consequence of Defendant Skylab's breaches, Plaintiff Husky has been forced to retain the services of Miller Nash, LLP to prosecute this action, and is therefore entitled to an award of its reasonable attorney fees and costs incurred in this action, pursuant to contract and/or any other applicable rule, statute, or principle of law or equity.

47.     Further, because the Project is in Idaho and Defendant Skylab provided its services in Idaho, I.C. § 29-110 applies here to prevent Skylab from seeking to require Plaintiff to enforce its contractual rights other than in Idaho tribunals or to limit the time in which

**COMPLAINT AND DEMAND FOR JURY TRIAL - 11**

Plaintiff may bring action on the contract. This action is therefore the appropriate venue to adjudicate Plaintiff's claims against Defendant Skylab.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract/Warranty – Defendant Andersen)**

48.     Plaintiff Husky hereby incorporates each of the foregoing paragraphs of this Complaint as if fully restated *in haec verba*.

49.     Defendant Andersen warranted the performance of its windows installed at the Project, as explained above.

50.     Plaintiff Husky is the current owner of the Humbird Hotel where Andersen's windows were installed and thus holder of the rights and benefits under Andersen's warranty.

51.     To the extent needed, Plaintiff Husky is also the valid successor-in-interest of Seller's rights and benefits under Andersen warranty.

52.     Plaintiff Husky has submitted a warranty claim to Defendant Andersen.  Despite a year having passed since submitting that claim, Andersen has not offered any repair, replacement, refund, or other remedy.

53.     As a result of Defendant Andersen's breach of and failure to honor its warranty, Plaintiff Husky has suffered damages and losses in an amount to be proven at trial but expected to be well above $75,000, plus recoverable attorney fees, costs, and expenses

54.     As a further consequence of Defendant Andersen's breaches, Plaintiff Husky has been forced to retain the services of Miller Nash, LLP to prosecute this action, and is therefore entitled to an award of reasonable attorney fees and costs incurred in this action, pursuant to contract and/or any other applicable rule, statute, or principle of law or equity.

55.     Further, because the Project is in Idaho and Andersen provided its goods or services in Idaho, I.C. § 29-110 applies here to prevent Andersen from seeking to require

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

Plaintiff to enforce its contractual rights other than in Idaho tribunals or to limit the time in which Plaintiff may bring action on the contract. This action is therefore the appropriate venue to adjudicate Plaintiff's claims against Defendant Skylab.

## RESERVATION OF RIGHTS

In accordance with Federal Rule of Civil Procedure 15, Plaintiff Husky reserves the right to supplement and/or amend this Complaint as additional information is disclosed through the course of this litigation.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Husky hereby demands a trial by jury on all issues so triable.

## ATTORNEY FEES AND COSTS

Plaintiff Husky has been required to obtain the assistance of counsel in the prosecution of this Complaint. It is therefore entitled to recover its reasonable costs and attorney fees incurred in this action pursuant to the terms of the parties' contracts, Federal Rule of Civil Procedure 54, Idaho Code §§ 12-120(3) and 12-121, and/or any other laws and rules applicable to the facts and claims set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Husky hereby prays for relief on this Complaint as follows:

1.      That the Court enter Judgment in favor of Plaintiff Husky and against Defendant Skylab, on all claims and causes of action asserted in this Complaint (including pre- and post-judgment interest at the applicable rate);

2.      That the Court enter Judgment in favor of Plaintiff Husky and against Defendant Anderson on all claims and causes of action asserted in this Complaint (including pre- and post-judgment interest at the applicable rate);

3.      That the Court award Plaintiff Husky its reasonable costs, expenses, and attorney fees in this action;

4.      To the extent any defendant shows that any claim, issue, or cause of action is subject to a valid requirement for arbitration or any other alternative dispute resolution requirement, that the Court stay the case, retain jurisdiction, refer the parties to arbitration or any other alternative dispute resolution procedure to take place in Idaho, and thereafter if necessary enter a judgment in conformity with any arbitrators' award; and

4.      That the Court award Plaintiff Husky such other and further relief deemed just, proper, equitable, and reasonable.

Dated: February 4, 2026                    MILLER NASH LLP

Thomas J. Lloyd, ISB No. 7772
thomas.lloyd@millernash.com
/s/ Brain Esler
Brian Esler, ISB No. 7362
brian.esler@millernash.com 950 W Bannock St,
Ste 110 Boise, ID 83702
Phone: 208-609-3798

4916-0203-4316.4

**COMPLAINT AND DEMAND FOR JURY TRIAL - 14**